# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACK FERRANTI, | : | Civil No. 3:17-cv-901 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| WARDEN KATHY LANE, et al., | : | |
| Defendants | : | |

## MEMORANDUM

### I. Background

Plaintiff Jack Ferranti ("Ferranti"), a inmate currently confined at the Allenwood Low Security Federal Correctional Institution ("LSCI-Allenwood"), located in White Deer, Pennsylvania, initiated this action pursuant to Bivens[1], 28 U.S.C. § 1331. (Doc. 1). Named as Defendants are Bureau of Prisons ("BOP") Director Thomas Kane, Northeast Regional Director M.D. Carvajal, and LSCI-Allenwood Warden Kathy Lane. (Id.). In the complaint, Ferranti alleges that Defendants improperly categorized his arson offense as greater security and assigned him a Public Safety Factor ("PSF"), which precluded him from several

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

liberty interests, including designation to a lower security institution.[2] (Doc. 1, ¶ 15). Ferranti argues that the United States Supreme Court decision in *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015), rendered this classification invalid. (*Id.* at ¶¶ 16, 30). He further argues that the classification violates due process, the ex post facto clause, the equal protection clause, the Fifth Amendment, and the Fourteenth Amendment. (*Id.* at ¶¶ 32-37). For relief, Ferranti requests that Defendants "authorize the waiver of the public safety factor, and reduction of Plaintiff's offense severity level commensurate to the requirements of the *Johnson* ruling." (Doc. 1, p. 13). He also requests modernization of the BOP classification policies and procedures. (*Id.* at p. 14).

Presently pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 13). The motion is ripe for disposition and, for the reasons set forth below, the Court will grant Defendants' motion for summary judgment.

## II. Summary Judgment Standard of Review

When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary

---

[2] BOP institutions are classified into one of five security levels: minimum, low, medium, high, and administrative, based on the level of security and staff supervision the institution is able to provide. (Doc. 16-1, p. 13, BOP Program Statement 5100.08). An inmate is classified on the level of security and supervision the inmate requires, as well as the inmate's programming needs. (*Id.*). Ferranti is currently assigned to a low security institution.

2

judgment under Rule 56." FED. R. CIV. P. 12(d). Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so. *Id.*; *Garcia v. Newtown Twp.*, 2010 WL 785808, at *3 (E.D. Pa. 2010). However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Third Circuit Court of Appeals has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." *Latham v. United States*, 306 F. App'x 716, 718 (3d Cir. 2009) (citing *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996)). Accordingly, the Court will treat Defendants' filing as a motion for summary judgment.

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

> material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. *Bivens* Standard

A *Bivens* action is the federal counterpart to an action filed under 42 U.S.C. § 1983. *See Paton v. LaPrade*, 524 F.2d 82 (3d Cir.1975); *Farmer v. Carlson*, 685 F.Supp. 1335, 1338 (M.D. Pa. 1988). Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. Statement of Undisputed Facts

Rule 56 of the Federal Rules of Civil Procedure provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). Similarly, Middle District of Pennsylvania Local Rule 56.1 states: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1. Ferranti filed a brief (Doc. 17) in opposition to Defendants' motion for summary judgment, however he failed to file a responsive statement of facts as required by the Federal Rule of Civil Procedure 56(e)(2) and Local Rule 56.1. Thus, the undisputed facts, taken from Defendants' statement of material facts, (Doc. 16, Statement of Material Facts), and the exhibits submitted therewith, are as follows.

BOP inmates are generally classified on the level of security and supervision the inmates require, in addition to the inmates' programming needs. (Doc. 16, ¶ 1; Doc. 16-1, pp. 3-4, Declaration of Jonathan Kerr ("Kerr Decl."), ¶¶ 3, 8; Doc. 16-1, p. 13, BOP Program Statement 5100.08, Inmate Security Designation and Custody Classification).

A security point score is computed to assist in determining a commensurate security level for an inmate. (Doc. 16, ¶ 2; Doc. 16-1, pp. 14, 20, BOP Program Statement

5100.08).

A Public Safety Factor can be applied to account for certain behaviors that require increased security measures to ensure the protection of society. (Doc. 16, ¶ 3; Doc. 16-1, pp. 14, 20, BOP Program Statement 5100.08). The severity of the inmate's current offense is scored to reflect the most severe documented instant offense behavior, regardless of the conviction, as delineated in the Statement of Reasons of the Judgment and Commitment Order, and the Presentence Investigation Report. (Doc. 16, ¶ 4; Doc. 16-1, p. 3, Kerr Decl. ¶ 4; Doc. 16-1, p. 18, BOP Program Statement 5100.08).

Ferranti is serving an aggregate 435-month term of imprisonment for violating 18 U.S.C. § 371, Conspiracy to Commit Arson, 18 U.S.C. § 844(i), Arson Resulting in Death, 18 U.S.C. § 1341, Mail Fraud, 18. U.S.C. § 1512(b)(1), Tampering with a Witness, and 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Convicted Felon, imposed by the United States District Court for the Eastern District of New York in Criminal Case Number 95-CR-119, and the United States District Court for the Southern District of New York in Criminal Case Number 94-CR-53. (Doc. 16, ¶ 5; Doc. 16-1, p. 3, Kerr Decl. ¶ 5; Doc. 16-1, pp. 137-41, Public Information Inmate Data). Ferranti's instant offense behavior included directing and organizing the arson of his clothing store in order to benefit from an insurance policy. (Doc. 16, ¶ 6; Doc. 16-1, p. 3, Kerr Decl. ¶ 5; Doc. 16-1, pp. 137-41, Public Information Inmate Data). One firefighter was killed and other firefighters were injured while

fighting the fire that Ferranti organized. (Doc. 16, ¶ 7; Doc. 16-1, p. 3, Kerr Decl. ¶ 5; Doc. 16-1, pp. 137-41, Public Information Inmate Data).

An arson offense with a substantial risk of death or bodily injury falls under "Greatest Severity" and the Greatest Severity denotation results in the assignment of the Greater Severity Offense PSF. (Doc. 16, ¶ 8; Doc. 16-1, p. 4, Kerr Decl. ¶ 6; Doc. 16-1, pp. 63, 125, BOP Program Statement 5100.08).

According to BOP policy, a male inmate who has a Security Point Total between 0 and 11 and Greatest Severity Offense PSF is housed at a low security institution. (Doc. 16, ¶ 9; Doc. 16-1, p. 4, Kerr Decl. ¶ 6; Doc. 16-1, pp. 63, 70, BOP Program Statement 5100.08). Ferranti's point total is 9, the PSF was not waived, and he is designated to a low security institution. (Doc. 16, ¶ 10; Doc. 16-1, p. 4, Kerr Decl. ¶ 6; Doc. 16-1, pp. 142-43, Male Custody Classification Form).

The only person authorized to waive a PSF is the administrator of the BOP's Designation and Sentence and Computation Center. (Doc. 16, ¶ 11; Doc. 16-1, p. 4, Kerr Decl. ¶ 6; Doc. 16-1, p. 59, BOP Program Statement 5100.08).

## V. Discussion

Defendants seek dismissal of the complaint, or an entry of summary judgment, on the following grounds: (1) Defendants sued in their official capacities are entitled to sovereign immunity; and (2) Ferranti has not alleged sufficient personal involvement of

Defendants. (Doc. 15). Alternatively, Defendants argue that the Court should grant their motion for the following reasons: (1) Ferranti has not been deprived of any right secured by the Constitution; (2) the reasoning set forth in *Johnson v. United States*, — U.S.—, 135 S. Ct. 2551 (2015), does not apply to Bureau of Prisons classification policies; and, (3) Defendants are entitled to qualified immunity. (Doc. 15). The Court will address these arguments seriatim.

### A. Official Capacity Claims

Defendants argue that Ferranti cannot maintain a suit against Defendants in their official capacities. (Doc. 15, pp. 15-16). Defendants further argue that to the extent that the Federal Bureau of Prisons is named as a Defendant, the BOP is likewise entitled to sovereign immunity as an agency of the United States. (Doc. 15, p. 9, n. 2).

Sovereign immunity bars any claims brought against the above-named Defendants in their official capacities. Specifically, sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Indeed, "[a]n action against government officials in their official capacities constitutes an action against the United States [and is] barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007). Ferranti asserts no such waiver of sovereign immunity, and the United States and its

agencies have not waived their immunity from suit. *Bivens* does not waive sovereign immunity with respect to claims brought against federal employees sued in their official capacities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."). Thus, Ferranti cannot maintain a claim against the Defendants in their official capacities. *See Lewal*, 289 F. App'x at 516; *Webb*, 250 F. App'x at 471. Additionally, any claim against the Federal Bureau of Prisons is plainly barred by the doctrine of sovereign immunity. *See Malesko*, 534 U.S. at 72.

### B. Personal Involvement Claim

Defendants next argue that Ferranti fails to state a claim against Lane, Carvajal, and Kane because they lack personal involvement in the alleged wrongs, and there is no evidence establishing their personal involvement. (Doc. 15, pp. 16-19). The Court agrees.

Individual liability can be imposed in a civil rights action only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal

10

involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Ferranti asserts that Defendants Lane, Carvajal, and Kane were personally involved in his custody classification and PSF assignment because they reviewed administrative grievance appeals, supervised the reviewer of appeals, and are responsible for the enforcement of national policy. (Doc. 1, pp. 4, 11-12). He appears to sue Defendants Lane, Carvajal, and Kane based on their participation in the grievance process. (*Id.*). However, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Thus, insofar as these Defendants Lane, Carvajal, and Kane are sued in their capacity for reviewing and denying Ferranti's grievances, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005)

11

(concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability); *Cole v. Sobina*, 2007 WL 4460617, at *5 (W.D. Pa. 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

Furthermore, Ferranti's conclusory statement that Defendants Lane, Carvajal, and Kane are personally involved because they are responsible for enforcement of national policy is not a sufficient allegation establishing their personal involvement. *See Parks v. Samuels*, 2015 WL 5954185, at *10 (M.D. Pa. 2015) (dismissing *Bivens* claim against defendants who allegedly "were personally involved through their roles as BOP officials and administrators, through their involvement as ranking officials charged with promulgating and administering BOP policy, and apparently failing to act favorably on [the inmate's] grievances or administrative remedies").

A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *See Anderson*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986); *see also* FED. R. CIV. P. 56(c), (e). Ferranti has failed to meet his burden with respect to his claims against Defendants Lane, Carvajal, and Kane. (*See* Docs. 1, 17). Consequently, Defendants Lane, Carvajal, and

Kane are entitled to an entry of judgment in their favor based on their lack of personal involvement in the alleged wrongs.

### C. Failure to Set Forth a Viable Constitutional Claim

An inmate does not have a liberty interest in assignment to a particular institution or security classification, so long as the conditions and degree of the inmate's confinement fall within the sentence imposed and do not otherwise violate the Constitution. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (noting classification and eligibility for rehabilitative programs in federal prison system are matters delegated by Congress to "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"); *see also Sandin v. Connor*, 515 U.S. 472, 484-86 (1995) (holding that liberty interest is implicated only where action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates "major disruption in his environment"); *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 463 (1989) (holding liberty interest arises only where statute or regulation uses "explicitly mandatory language" that instructs decision-maker to reach specific result if certain criteria are met); *see also Marti v. Nash*, 227 F. App'x 148, 150 (3d Cir. 2007) (inmate has no due process right to any particular security classification); *Day v. Nash*, 191 F. App'x 137, 139-40 (3d Cir. 2006)

(upholding application of public safety factor to inmate's custody classification which prevented inmate's placement in a minimum security camp). Furthermore, the placement of prisoners within the federal prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225.

Ferranti does not have a constitutional right to any particular security classification or right to the housing facility of his choice. See *Wilkinson v. Austin*, 125 S.Ct. 2384, 2393 (2005) (stating that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); *Marti*, 227 F. App'x at 150 (an inmate cannot challenge a "Greatest Severity" PSF assignment because "no due process right[] to any particular security classification" exists) (citing *Moody*, 429 U.S. at 88 n. 9). Therefore, Ferranti has failed to establish a violation of his constitutional rights, and Defendants' motion will be granted on this ground.

### D. *Johnson* does not apply to BOP Classification Policies

Ferranti claims that the BOP violated its Program Statement 5100.08 and incorrectly determined his custody classification with a Public Safety Factor Classification of greatest severity by relying on his underlying offense, which he claims is erroneously classified as a crime of violence in light of *Johnson*. (Doc. 1, p. 3).

In *Johnson*, the Court held that the residual clause of the Armed Career Criminal Act

14

("ACCA") defining "violent felony" was unconstitutionally vague and, that consequently, "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563. The *Johnson* Court concluded that the residual clause of the Armed Career Criminal Act was so vague that it violated the Fifth Amendment due process protections. *Id.* Thus, Ferranti argues that *Johnson* renders his current offense severity and BOP classification policy invalid. However, as stated *supra*, Ferranti has no due process liberty interest in his custody classification score or his security designation level. *See Moody*, 429 U.S. at 88 n. 9 (1976) (federal prison officials have "full discretion" to control prisoner classification and an inmate has "no legitimate statutory or constitutional entitlement sufficient to invoke due process"). Moreover, in *Beckles v. United States*, the Supreme Court ruled that the residual clause of § 4B1.2 of the advisory Sentencing Guidelines was not unconstitutionally vague under the Due Process Clause. *Beckles*, — U.S. —, 137 S.Ct. 886, 890 (2017). The *Beckles* Court refused to apply *Johnson* to a void-for-vagueness challenge to a similar residual clause found in advisory Sentencing Guidelines § 4B1.2(a) because the Guidelines, like the Program Statements, "do not regulate the public by prohibiting any conduct," but provide guidance in the exercise of discretion within the bounds established by Congress. *Beckles*, 137 S.Ct. at 895. Based on the foregoing, the reasoning in *Johnson* is not applicable to an analysis of BOP classification policies, and Defendants' motion will be

granted on this ground.

### E.  Qualified Immunity

Defendants invoke the defense of qualified immunity in their motion. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp*, 669 F.3d at 159 (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly

established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). Because there are no genuine issues of fact as to whether a constitutional right has been violated, Defendants are protected by qualified immunity.

## VI. Conclusion

Based on the foregoing, Defendants' motion for summary judgment will be granted. A separate Order shall issue.

Dated: July 12, 2018

Robert D. Mariani
United States District Judge